UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80730-CIV-MARRA

HEATHER KERTESZ,

Plaintiff,

vs.

NET TRANSACTIONS, LTD., a
Gibraltar limited liability company,
d/b/a COLLEGEWILDPARTIES.COM;
VENTURA CONTENT, AVV, an Aruban
corporation, TB ADVERTISING SERVICES,
AVV, an Aruban corporation, WESTLAKE
HOLDINGS, AVV, an Aruban corporation,
EDWARD JAMES ENTERPRISES, INC., a
Florida corporation, and JAMES WITUCKI,
an individual,

Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendants Net Transactions, Ltd., Ventura Content, AVV, TB Advertising AVV, Edward James Enterprises, Inc. and James Witucki's Motion to Dismiss Count IV of the Third Amended Complaint and Ventura Content, AVV and TB Advertising AVV's Motion to Dismiss pursuant to Rule 12(b)(2) (DE 101). The Court has carefully considered the motions and is otherwise fully advised in the premises.

### I. Background

The Third Amended Complaint ("TAC") makes the following allegations: Plaintiff Heather Kertesz ("Plaintiff" "Kertesz") was, at all relevant times, a college student at Lynn University in Boca Raton, Florida. (TAC ¶ 2.) Defendant Ventura Content, AVV ("Ventura") is

an Aruban corporation that produces, contracts for, commissions and owns the pornographic content displayed on www.collegewildparties.com. (TAC ¶ 4.) The college parties website is owned, operated and controlled by Defendant Net Transactions, Ltd. ("Net"). (TAC ¶ 3.) Defendant Westlake ("Westlake") is an Aruban corporation which holds the bank accounts for Net. (TAC ¶ 6.) Defendant TB Advertising AVV ("TB") is an Aruban corporation that owns and operates a marketing and promotion affiliate program on the world wide web through which it "regularly and systematically enters into contractual agreements with Florida residents." (TAC ¶ 5.) Edward James Enterprises, Inc. ("EJE") is a Florida corporation that is in the business of filming pornography. (TAC ¶ 7.) James Witucki ("Witucki") is the officer of EJE and a photographer/videographer who films pornography in Florida. (TAC ¶ 8.)

Net owns and operates hundreds of websites, including the college wild parties website. (TAC ¶¶ 17, 19.) Net obtains photographs and videos from Ventura, which purchases and licenses adult content. (TAC ¶ 21.) TB serves as a "conduit for internet traffic for all the Net [ ] websites" and pays its "webmasters" to steer consumers to its affiliated websites, including the college parties website. (TAC ¶ 22.) Since early 2005, EJE and Witucki, have hosted parties attended by college students where pornography was filmed. (TAC ¶ 24.)

On March 23, 2007, Plaintiff attended a house party in Boca Raton, Florida thrown by EJE and Witucki, for the benefit of Ventura. (TAC ¶ 26.) Unbeknownst to Plaintiff, EJE and Witucki were taking video and still photography for a pornographic website. (TAC ¶ 27.) After having her photograph taken without her permission, Plaintiff was asked to sign a waiver and release. Plaintiff refused and was asked to leave. (TAC ¶ 29.) Without Plaintiff's consent, Defendants have used her image and likeness on the college wild parties website and on EJE's

home web page. (TAC ¶¶ 32-36.)  Specifically, Plaintiff's image and likeness was published and displayed in the photomontage of the advertising banner that appears on every page of the college wild parties website.  It is the first image that users see upon gaining access to the website. (TAC ¶ 33.)  The image is of Plaintiff's smiling face while viewing a male and female engaged in sodomy.  Plaintiff's head and face were, however, cropped or "photoshopped" from a separate image and placed on the banner to appear as if Plaintiff is watching the couple as the sexual act took place. (TAC ¶ 34.)

The TAC alleges: (1) unauthorized publication of likeness under Florida Statute § 540.88 against EJE, Ventura, Net and Westlake (count one); (2) defamation by implication against Net, Ventura, Westlake, EJE and Witucki (count two); (3) unjust enrichment against all Defendants (count three) and (4) declaratory and injunctive relief pursuant to Florida Statute § 501.201 et seq. (Florida Deceptive and Unfair Trade Practices Act or "FDUTPA") against all Defendants (count four).  Defendants Ventura and TB move to dismiss the TAC for lack of personal jurisdiction and all Defendants move to dismiss count four of the TAC.

II.  Evidence Relating to Personal Jurisdiction

A. Defendants Ventura and TB's Evidence

Ventura is an entity organized under the laws of the nation of Aruba.  Ventura does not maintain any offices or other locations in any part of the United States.  (Allison Vivas Decl. ¶ 3.)  Ventura purchases photography and video from third-party producers and licenses that content to other entities. (Vivas Decl. ¶ 5.)  Ventura does not publish or display any content that it owns. (Vivas Decl. ¶ 7.)  Nor does Ventura participate in the creation of any content. Instead, Ventura purchases content from third-party producers.  (Vivas Decl. ¶ 6.) With respect to the

content at issue in this litigation, Ventura purchased the photographs and videos from EJE and subsequently licensed that content to Net. (Vivas Decl. ¶ 8.)

TB is an entity organized under the laws of the nation of Aruba. TB does not maintain any office or presence in the United States. (Vivas Decl. ¶ 4.) TB promotes the sale of products and services offered by other entities through a mechanism known as a "webmaster sales program." In essence, TB pays commissions/referral fees to independent contractor participants ("webmasters") for sales generated by those webmasters on behalf of TB's advertising clients. When a consumer purchases a product or service from the internet web page of one of TB's advertising clients, and that sale was generated by a referral from a webmaster, TB pays the webmaster a commission for the sale. (Vivas Decl. ¶ 9.) Sales generated by referrals from TB's webmasters are made directly from the vendors of the products/services. (Vivas Decl. ¶ 12.) TB does not produce any photographs or video displayed on websites that are clients of TB's webmaster program. (Vivas Decl. ¶ 11.) TB does not own or operate the websites of clients whose products or services are advertised via the webmaster sales program. TB does not operate the college wild parties website nor has it collected proceeds resulting from the sale of subscriptions or memberships. (Vivas Decl. ¶¶ 10, 12.)

Net is an entity organized under the laws of the nation of Gibraltar. (Vivas Decl. ¶ 2.) Net owns the college wild parties website and collects all proceeds generated from sales of subscription memberships to the website. (Vivas Decl. ¶ 13.) Net does not participate in the creation of original content that appears on any website it owns or operates. Net did not participate in the creation of the content appearing on the college wild parties website or in the purchase from the producer of the content at issue in this litigation. (Vivas Decl. ¶ 14.)

B. Plaintiff's Evidence

In the three years prior to the filing of the complaint in this action, Ventura spent almost $1.3 million to buy the rights to adult videos and photographs from Florida producers. (Rika Daun Decl. ¶ 4.) Among the producers from which Ventura bought videos are Defendants EJE and Witucki, totaling $895,000.00 in payments. (Daun Decl. ¶ 5.) EJE and Witucki were paid $14,000.00 for the video/still photos at issue in this litigation. (Daun Decl. ¶ 6.) Ventura also purchased videos and still photographs from several other producers of adult entertainment including Dave Pounder Productions, LLC and Thor Productions. (David Mech Decl. ¶ 5; Demitri Hioteles Decl. ¶ 5.) Ventura purchased the rights to an adult video created by Dave Pounder Productions in Florida for $3,000.00. (Mech Decl. ¶ 5-7.) Ventura engaged in a similar practice with Thor Productions, purchasing $91,000.00 worth of videos created by Thor Productions in Florida. (Hioteles Decl. ¶ 5-6, 9.) In total, Ventura purchased at least 581 separate adult video productions from Florida producers in the three year period prior to the filing of this action. (Daun Decl. ¶ 8.) Ventura sent and received over 500 pages of correspondence, emails and instant messages from Florida producers regarding the specifications for adult videos and the purchase of adult videos. (Daun Decl. ¶ 9.) Once or twice, Ventura sent an employee to Florida to meet with independent contractors. (Vivas Dep. 104-05.)

To enroll in TB's webmaster sales program, webmasters go to the www.topbucks.com website and fill out a form. (Topbucks Form, Ex. F, attached to DE 106.) Comparing Florida to other states, cities or provinces worldwide, Florida ranks fourth in the total number of TB webmasters. During the relevant period, Florida webmasters were responsible for a substantial number of sales to customers they referred to Net's websites. As compared to other states, cities

or provinces, Florida ranks second in total volume of sales. Florida also ranks second in the dollar value of sales as compared to other states, cities or provinces worldwide. TB has webmasters in almost all fifty states. The second largest concentration of webmasters is in Florida, where 25.27% of TB's webmasters are located. In percentage terms, Florida is second in worldwide sales volume. Of the top ten highest grossing webmasters, two were located in Florida. The third highest grossing webmaster in the TB program, a Florida webmaster, earned over $20,000.00 in a three year period for sending customers to Net's websites. (Charts, Ex. G, attached to DE 106.)

TB has sent employees to a major industry trade show in Hollywood, Florida for three years in a row. (Vivas Dep. 103-04; Internext Registration Records, Ex. H, attached to DE 106.) At the event, TB paid $3,000.00 for "restroom advertising." (Invoice, Ex. I, attached to DE 106.) The badges issued to two TB employees show that they were exhibitors at the trade show; Ms. Vivas was an exhibitor and speaker. (Internext Registration Records; AVN Online Magazine, Ex. J, attached to DE 106.) Ms. Vivas was also a speaker at the 2007 trade show and is featured in the speaker biography for the event. (Internext Records, Ex. K, attached to DE 106.)

### III. Legal Standard Relating to Personal Jurisdiction

The plaintiff's burden in alleging personal jurisdiction requires that the plaintiff establish a prima facie case of personal jurisdiction over a nonresident defendant. A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. If by defendant's affidavits or other competent evidence, defendant sustains the burden of challenging plaintiff's allegations, the plaintiff must

substantiate the jurisdictional allegations in the complaint by affidavits, testimony or documents. However, where the evidence conflicts, the district court must construe all reasonable inferences in favor of the plaintiff.  See Future Tech. Today, Inc., v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000); Robinson, 74 F.3d 253, 255 (11th Cir. 1996) citing Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

With respect to specific jurisdiction, the determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. When jurisdiction is based on diversity, Rule 4(e) of the Federal Rules of Civil Procedure requires that the assertion of jurisdiction be determined by the state long-arm statute.  If there is a basis for the assertion of personal jurisdiction under the state statute, the Court must next determine whether: (1) sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment and that (2) maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989).  Only if both prongs of the Due Process analysis are satisfied may this Court exercise personal jurisdiction over a nonresident defendant. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996) citing Madara, 916 F.2d at 1514; International Shoe Co. v. Washington, 326 U.S. at 316.

Minimum contacts for specific jurisdiction involve three criteria:  First, the contacts must be related to the plaintiff's cause of action or have given rise to it.  Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws.  Finally, the defendant's contacts within the forum state must be such that it should reasonably anticipate being haled into court there.

See Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 631 (11th Cir. 1996).

In order for a court to exercise general jurisdiction in Florida, the contacts must be especially pervasive and substantial to satisfy section two of the Florida long-arm statute 48.193. General Cigar Holdings, Inc. v. Altadis S.A., 205 F. Supp. 2d 1335, 1343 (S.D. Fla. 2002); see Florida Statutes.§ 48.193(2).  The general jurisdiction provision of the statute states:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Id.  General jurisdiction arises from a defendant's contacts with Florida that are not directly related to the cause of action being litigated and connexity between a defendant's activities and the cause of action is not required.  Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). The "substantial and not isolated activity" requirement of the long-arm statute has been recognized by Florida courts as the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment Due Process Clause as discussed in Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 413-416 (1984); see Woods v. Nova Cos. Belize, Ltd., 739 So.2d 617, 620 (Fla. Dist. Ct. App. 1999); Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So.2d 716, 720 (Fla. Dist. Ct. App. 1998).  A finding that a defendant's activities satisfy section 48.193(2)'s requirements also necessitates a finding that minimum contacts exist.  See Universal Carribean Estab. v. Bard, 543 So.2d 447, 448 (Fla. Dist. Ct. App. 1989).  Therefore, the analysis of jurisdiction under section 48.193(2) and the Due Process clause merge.

IV.  Discussion Relating to Personal Jurisdiction

Plaintiff asserts personal jurisdiction over Ventura and TB under the following provisions of the Florida long-arm statute:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> (b) Committing a tortious act within this state.
>
> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193.

With respect to sections 48.193(1)(a) and 48.193(2), Plaintiff points to evidence that Ventura purchased $1.2 million of pornography filmed in Florida by Florida residents and that Ventura sent a business representative to Florida on one or two occasions to meet with independent contractors.  Regarding TB, Plaintiff states that TB paid over $2.5 million to 161 Florida webmasters and that TB regularly sent employees to Florida for an industry trade show.

Plaintiff has adduced no evidence showing that any of Ventura or TB's visits to Florida relate to Plaintiff's cause of action, thus this evidence has no bearing under Florida Statute § 48.193(1)(a).  See Gadea v. Star Cruises, Ltd., 949 So. 2d 1143, 1149-50 (Fla. Dist. Ct. App. 2007) (there must be a "direct affiliation, nexus, or substantial connection to exist between the basis for the plaintiff's cause of action and the defendant's business activity in the state").

Moreover, regardless of whether Ventura's purchases of pornography or TB's purchases of services from Florida entities establish personal jurisdiction under section 48.193(1)(a), Florida law is clear that the "[m]ere purchase of goods within the state of Florida by a non-resident without more [is] insufficient to satisfy the due process requirements of minimum contacts." Marsh Supermarkets, Inc. v. Queen's Flowers Corp., 696 So. 2d 1207, 1209 (Fla. Dist. Ct. App. 1997); see Aluminator Trailers, L.L.C. v. Loadmaster Aluminum Boat Trailers, Inc., 832 So. 2d 822, 823 (Fla. Dist. Ct. App. 2002) (same); Bruzzone Roldos v. Americargo Lines, Inc., 698 So. 2d 1368, 1369 (Fla. Dist. Ct. App. 1997) (same).  Likewise, given that the analysis of jurisdiction under section 48.193(2) and the Due Process clause merge, Ventura and TB's purchases from Florida entities do not, standing alone, warrant the exercise of general jurisdiction over them. See generally Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 418 (1984) (mere purchases in forum state are insufficient to warrant exercise of general jurisdiction over a nonresident defendant).  Nor does the attendance by TB's representatives at a Florida trade show or Ventura's representatives' one or two visits to Florida rise to the level of continuous and systematic contacts.  Cf. Woods, 739 So. 2d at 620-21 (continuous and systematic business activities established over company which sold approximately eighteen percent of its product to Florida importers, moved nearly all of its product through the state, purchased equipment and supplies from Florida suppliers, utilized storage facilities in Florida, and established essential business relationships in this state).  Simply put, such attenuated contacts hardly constitute "continuous and systematic" activities in the state of Florida.  See Oy v. Car nival Cruise Lines, Inc., 632 So. 2d 724, 726 (Fla. Dist. Ct. App. 1994) citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (noting that for general jurisdiction the defendant's conduct

must be "such that he should reasonably anticipate being haled into court there").

Likewise, the Court rejects Plaintiff's argument that personal jurisdiction can be asserted over Ventura and TB pursuant to Florida Statute § 48.193(1)(b). The allegations of the TAC fail to demonstrate that Ventura or TB committed a tort. Although Plaintiff alleges that Ventura committed the tort of unauthorized publication of likeness and defamation by implication, Plaintiff has not identified any act by Ventura constituting the publication of an image of Plaintiff. Instead, the allegations state that Ventura bought a videotape with Plaintiff's image from EJE and Witucki. Lastly, none of the allegations supporting the FDUTPA claim contain any allegations of acts committed by either Ventura or TB.[1] (TAC ¶ 60.)

Moreover, Plaintiff has not shown how Ventura and TB expressly aimed their tortuous conduct at Plaintiff in Florida. See Licciardello v. Lovelady, 544 F.3d 1280, 1286-1288 (11th Cir. 2008). Instead, the allegations against Ventura concern the purchasing of a videotape from EJE and Witucki that happened to have Plaintiff's image, which it later licensed to Net. Nothing about that purchase shows that Ventura intentionally sought to harm Plaintiff in Florida such that Ventura should expect to be haled into a Florida court. Id. at 1286. Furthermore, Ventura and TB's peripheral role connecting them to Plaintiff's image on the internet is entirely "random," "fortuitous" and "attenuated." Therefore, they could not "reasonably anticipate being haled into court in Florida." Id. at 1288 quoting Allerton v. State Department of Ins., 635 So. 2d 36, 40 (Fla.

---

[1] There is also disagreement as to whether a FDUTPA claim is even a tort. Compare Jones v. Jeld-Wen, Inc., No. 2699434, 2008 WL 2699434, at * 7 (FDUTPA is a statutory cause of action, not a tort) with Horowitch v. Diamond Aircraft Industries, Inc., 526 F. Supp. 2d 1236, 1249 (M.D. Fla. 2007) (treating FDUTPA as a tort claim). The Court chooses not to resolve this issue.

Dist. Ct. App. 1994). Consequently, the Court also concludes that jurisdiction over these Defendants would not comport with fair play and substantial justice.

Lastly, the Court rejects Plaintiff's contention that "even assuming arguendo that jurisdiction is lacking for [Ventura and TB's] activities directly, it exists over Ventura and TB [ ] as agents/alter egos of Net and Westlake." (DE 106 at 12.)  To impute Ventura and TB's activities to Net and Westlake, Plaintiff needed to allege that Ventura and TB were mere instrumentalities of Net and Westlake and that Net and Westlake used improper conduct in forming or using Ventura and TB.  See Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114 (Fla. 1984); Aldea Communications, Inc. v. Gardner, 725 So. 2d 456 (Fla. Dist. Ct. App. 1999). The TAC does not allege improper conduct, such as fraud, in the formation or use of these two corporate entities. Thus, because the allegations of the TAC do not meet the requirements for establishing alter ego liability, the Court finds that this provision of the long-arm statute cannot be met.

In sum, the Court concludes that personal jurisdiction cannot be exercised over Ventura or TB.  Hence, these Defendants are dismissed for lack of personal jurisdiction.

V. Legal Standard Relating to the Motion to Dismiss Count IV of the TAC

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed.R.Civ.P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

12

Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

VI.  Discussion Relating to the Motion to Dismiss Count IV of the TAC

Defendants move to dismiss Count IV of the TAC, the FDUTPA claim, on the following basis: (1) the claim fails to specify which provision of FDUTPA Defendants allegedly violated; (2) the claim fails to specify which acts constitute any form of transaction within the scope of FDUTPA; (3) the claim states that all five Defendants committed all nine of the acts alleged to be deceptive and (4) Plaintiff has no standing to raise a FDUTPA claim because she is not a consumer.[2]

To state a claim for injunctive and declaratory relief, Plaintiff must allege that Defendants engaged in a deceptive act or practice in trade and that Plaintiff is a person "aggrieved" by the deceptive act or practice. Fla. Stat. § 501.211; see Klinger v. Weekly World News, Inc., 747 F. Supp. 1477, 1480 (S.D. Fla. 1990).  "A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." City First Mortgage Corp. v. Barton, 988 So.2d 82, 86 (Fla. Dist. Ct. App. 2008) quoting Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006); see Kia Motors Am. Corp. v. Butler, 985 So.2d 1133, 1140 (Fla. Dist. Ct. App. 2008); KC Leisure, Inc. v. Haber, 972 So.2d 1069, 1073 (Fla. Dist. Ct.

---

[2] Defendants also argue that the TAC fails to allege that Ventura and TB engaged in any acts that are the basis of Plaintiff's FDUTPA claim.  The Court agrees.  In fact, these pleading deficiencies contributed to the dismissal of these Defendants for lack of personal jurisdiction.

App. 2008). A deceptive practice is one that is "likely to mislead." Davis v. Powertel, Inc., 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000); see also Fendrich v. RBF, L.L.C., 842 So. 2d 1076, 1079 (Fla. Dist. Ct. App. 2003).  An unfair practice is "one that offends established public policy" and is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  PNR, Inc. v. Beacon Property Management, Inc., 842 So. 2d 773, 777 (Fla. 2003); Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006).  FDUTPA "applies to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single contract." PNR, 842 So. 2d at 1279.

Defendants contend that Plaintiff has no standing to bring this claim because, based on the acts alleged, she is not a consumer.  In response, Plaintiff does not dispute that she is not a consumer. Instead, she claims that the 2001 amendments to FDUTPA replaced the word "consumer" with the word "person" which reflects a "deliberate legislative decision" to expand the statute to include non-consumers. (DE 106 at 15-16.)  The Court disagrees.  In so ruling, the Court relies on the legislative history surrounding the enactment of the 2001 amendments to FDUTPA.

With respect to the definition of "consumer" in FDUTPA, the legislative history states:

> The reason for enacting the FDUTPA was to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.
>
> . . . .
>
> Since 1979, the FDUTPA has contained a definition of "consumer" which includes corporations and other businesses.  [ ] Because the remedies under the FDUTPA were

14

>intended by the Legislature to be available to all persons, including businesses, the Legislature has several times amended the definition of "consumer" in the FDUTPA to clarify the intent to include businesses. Notwithstanding these amendments, courts have been inconsistent in their interpretations of the statute and its protections of businesses.

Senate Staff Analysis, CS/SB 208, Mar. 22, 2001, at p. 3.

The Committee also stated that the word "consumer" should be stricken and replaced by the word "person" in the text of the statute and noted that Florida Statute § 1.01(3) understands "person" to include a business. As such, this change clarifies that "remedies available to individuals are also available to businesses." Id. at 7; see also Senate Staff Analysis, SB 208, Jan. 16, 2001, at p. 3 ("the task force believed that the legislature intended to afford the remedies and protections under the FDUTPA to businesses"). This legislative history suggests to the Court that the change in the word "consumer" to "person" served to clarify that businesses, just like individuals, could obtain monetary damages in FDUTPA cases. Such an interpretation is also consistent with the overall purpose of FDUTPA which is to "protect the *consuming* public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2) (emphasis added).

The Court is unable to find any Florida state cases addressing the significance of the change in the wording of "consumer" to "person" in the 2001 amendments. However, there is a line of post-2001 amendment United States District Court cases that have held that only consumers may bring a private suit under FDUTPA.[3] See, e.g., Cannova v. Breckenridge

---

[3] The vast majority of cases analyzing FDUTPA are federal cases. See Beacon Property Management, Inc. v. PNR, Inc., 890 So. 2d 274, 278 (Fla. Dist. Ct. App. 2004) (state court decisions are "rare events" in FDUTPA litigation).

15

Pharm., Inc., No. 08-81145-CIV, 2009 WL 64337, at * 3 (S.D. Fla. Jan. 9, 2009) (only a consumer may bring private suit under FDUTPA); Goodbys Creek, LLC v. Arch Ins. Co., No. 3:07-cv-947-J-33HTS, 2008 WL 2950112, at * 8 (M.D. Fla. July 31, 2008) (same); Badillo v. Playboy Entertainment Group, Inc., No. 8:04CV591T30TBM, 2006 WL 785707, at * 6 (M.D. Fla. Mar. 28, 2006) (same).

At the same time, the Court notes that there is also a line of post-2001 amendment United States District Court cases which hold that the 2001 amendments allow non-consumers to bring claims for damages under FDUTPA. See, e.g., Hinson Elec. Contracting Co., Inc. v. Bellsouth Telecommunications, Inc., No. 3:07-cv-598-J-32MCR, 2008 WL 360803, at * 2-3 (M.D. Fla. Feb. 8, 2008) (noting that FDUTPA's 2001 amendments replaced the word "consumer" with "person" allowing a broader base of complainants to seek damages under FDUTPA); Furmanite America, Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1134, 1145-46 (M.D. Fla. 2007) (same); True Title, Inc. v. Blanchard, No. 6:06-cv-1871-Orl-19DAB, 2007 WL 430659, at * 3 (M.D. Fla. Feb. 5, 2007 (same). Those cases, however, did not analyze the legislative history of the amendment or rest on the interpretation given the statute by Florida state cases. Instead, they merely concluded that the replacement of the word "consumer" with "person" demonstrated a legislative intent to allow a broader base of complainants to seek damages. Because the legislative history of the amendment supports the contrary conclusion, the Court will not to follow this non-binding authority. Thus, Plaintiff, as a non-consumer, is not entitled to monetary damages under FDUTPA.

With respect to injunctive and declaratory relief, FDUTPA permits "anyone aggrieved" to bring a claim for declaratory and injunctive relief. Fla. Stat. § 501.211(1). It is unclear,

however, whether the term "anyone aggrieved" is broader than the term "person" and thereby permit relief for non-consumers. Given that Plaintiff has not clearly articulated the type of relief she seeks under FDUTPA, it is unnecessary for the Court to resolve this question of Florida law at the present time. Instead, the Court will grant Plaintiff leave to amend her complaint to plead injunctive or declaratory relief under FDUTPA, if that is what she seeks. Should Plaintiff include claims for injunctive or declaratory relief in an amended pleading, Defendants may modify their summary judgment motion and renew their argument that Plaintiff has no standing to raise a FDUTPA claim. In so doing, the parties must include citation to available Florida caselaw, legislative history and secondary sources that might assist the Court in resolving this issue.

Finally, Plaintiff's FDUTPA claim suffers from other pleading deficiencies. In reviewing the TAC, the Court finds that the act identified in paragraph 60(a) of the TAC does not constitute a deceptive act or practice in *trade or commerce*. With respect to the acts identified in paragraph 60(b)-(i), Plaintiff must re-plead those allegations to identify the Defendant or Defendants that allegedly committed these acts.

VII. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Count IV of the Third Amended Complaint (DE 101) is **GRANTED IN PART AND DENIED IN PART**. Defendants Ventura and TB's Motion to Dismiss pursuant to Rule

12(b)(2) (DE 101) is **GRANTED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of June 2009.

_____
KENNETH A. MARRA
United States District Judge